# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.    1:23 CR 459 |
| | ) | |
| Respondent, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| DARION SHELTON, | ) | MEMORANDUM OPINION |
| | ) | AND ORDER |
| Petitioner. | ) | |

This matter comes before the Court upon Petitioner, Darion Shelton's Motion to Vacate Sentence under 28 U.S.C. §2255.  (ECF #66).  The motion seeks to have the Court re-sentence Mr. Shelton to the same term of imprisonment, but to order that the sentence be served concurrent to his current state court sentence.  The Government filed a Response, and Mr. Shelton filed a Supplement and Reply in support of his motion.  (ECF #68, 69).

## FACTUAL AND PROCEDURAL BACKGROUND

Mr. Shelton was indicted on three counts including: (1) illegal firearm sales; (2) possession of a machine gun; and, (3) trafficking in firearms.  (EF #1, 14).  He pled guilty to the indictment through a written plea of guilty, which was read in his presence and affirmed by him at a change of plea hearing.  (ECF #48, 49, 65).  All three counts involved his sale of firearms

and machine gun conversion devices from June 22, 2023 to August 10, 2023. (ECF #54, PageID 198-99). In total, the charges involved 17 different firearms and multiple machine gun conversion devices. (ECF #49; 54, PageID 200). At the time of the sales, Mr. Shelton knew that the buyers intended to transport the firearms out of the country. (ECF #49, PageID 144).

One of the weapons sold, a Glock Model 23, .40 caliber pistol, was used by Mr. Shelton in a shooting that occurred on August 2, 2023. This firearm was not a machine gun. He sold the gun to ATF agents on the same day as the shooting. (ECF #54).[1] On May 7, 2025, Mr. Shelton pled guilty in state court to to: (1) felonious assault with a firearm specification; (2) improper discharging firearm at or into habitation; and (3) attempted having weapons while under disability. The weapons charges were all related to the use of the Glock Model 23, .40 caliber piston, serial number AGDC480 that he sold to ATF agents on August 2, 2023. None of the state charges involved the sale of this or any other firearm. Mr. Shelton was sentenced to nine years on the state charges.

---

[1] The Motion to Vacate indicates that two weapons sold to ATF agents on August 2, 2023 were connected to the shooting that formed the basis of Mr. Shelton's state court charges, citing statements by the prosecution at sentencing. However, Mr. Shelton's plea in state court references only the Glock Model 23, .40 caliber pistol, serial number AGDC480. See, Journal Entry 4/17/2025, Case No. 23-68530-A, Cuyahoga County Court of Common Pleas.; see also ECF #54, PageID 200.

## **LEGAL STANDARD**

A petitioner that moves to vacate, set aside or correct a sentence pursuant to 28 U.S.C.

§2255 must demonstrate that: (1) the sentence was imposed in violation of the Constitution or

laws of the United States; (2) the court was without jurisdiction to impose the sentence; (3) the

sentence was in excess of the maximum authorized by law; or (4) it is otherwise subject to

collateral attack. *See* 28 U.S.C. § 2255; *Hill v. United States*, 368 U.S. 424, 426-27 (1962). In

order to obtain relief under § 2255, petitioners must prove by a preponderance of the evidence

that their constitutional rights were denied or infringed. *United States v. Brown*, 957 F.2d 679,

690 (6th Cir. 2020). As such, a court may grant relief under § 2255 only if a petitioner has

demonstrated "a fundamental defect which inherently results in a complete miscarriage of

justice." *Id.* (internal quotation and citation omitted). Relief cannot be granted for alleged errors

that could have been reached by a direct appeal. *Stone v. Powell*, 428 U.S. 465, 477 (1076). To

"obtain collateral relief a prisoner must clear a significantly higher hurdle than would exist on

direct appeal." *United States v. Frady*, 456 U.S. 152, 166 (1982). "Once the defendant's chance

to appeal has been waived or exhausted. . . we are entitled to presume he stands fairly and finally

convicted." *Id.* at 164. If a § 2255 motion, as well as the files and records of the case,

conclusively show that the petitioner is entitled to no relief, then the court need not grant a

hearing on the motion. *See* 28 U.S.C. § 2255; *see also Blanton v. United States*, 94 F.3d 227,

235 (6th Cir. 1996) (recognizing that evidentiary hearing is not required when the record

conclusively shows that petitioner is not entitled to relief).

In this case, Mr. Shelton alleges that his sentence was issued in violation of the

Constitution because he did not receive effective assistance of counsel at the plea or sentencing

stages of his prosecution. In order to prevail on an ineffective assistance of counsel claim,

Petitioner must show that his counsel's performance was deficient, and that the deficient

performance prejudiced him to the extent that his conviction was unfair and the result was

unreliable. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). "This requires showing that

counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the

defendant by the Sixth Amendment." *Id.* The prosecution has no duty to prove that defense

counsel's strategy was actually reasonable, rather the petitioner bears the burden of proving that

the presumption is not warranted. *Id.* at 690. Judicial scrutiny of counsel's performance must be

"highly deferential." *Id.* at 689.

When reviewing allegations of ineffective assistance, effectiveness should not be

measured by best practices or most common custom. *See, Harrington v. Richter*, 562 U.S. 86,

105 (2011)(quoting *Strickland*, 466 U.S. at 690); *see, also, Rompilla v. Beard*, 545 U.S. 374, 380

(2005). "The Constitution guarantees criminal defendants only a fair trial and a competent

attorney. It does not insure that defense counsel will recognize and raise every conceivable or

constitutional claim." *Engle v. Isaac*, 456 U.S. 107, 134 (1982). Further, attorneys have no duty

to pursue frivolous arguments. *Jalowiec v. Bradshaw*, 657 F.3d 293, 321-22 (6th Cir. 2011).

Counsel is only ineffective under the Constitution if their performance was prejudicial to

the defense. *Id.* at 692. It is insufficient to show that counsel's errors had "some conceivable

effect on the outcome of the proceeding," rather, "the defendant must show that there is a

reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding

would have been different." *Id.* at 694. A probability is reasonable when it is "sufficient to

undermine confidence in the outcome." *Id.* Prejudice can be established under *Strickland*, in a

4

change of plea context, if a "petitioner demonstrates that counsel's deficient performance infected his decision making process, and thus undermine[d] confidence in the outcome of the plea process." *Gilbert v. United States*, 64 F.4th 764, 771 (6th cir. 2023)(quoting *Rodriguez-Penton v. United States*, 905 F.3d 481, 488 (6th Cir. 2018)). This does not necessarily require the defendant to show that absent the deficiency he would have chosen to go to trial. *Rodriguez-Penton* at 487-88. Rather, prejudice can be demonstrated if a defendant shows that, absent counsel's deficiency, "he would have bargained for a more favorable plea." *Id.* at 488.

## ANALYSIS

Mr. Shelton claims that his counsel erroneously told him that he would be sentenced to a range of 46 to 57 months, and failed to tell him that he could have bargained for a federal sentence that would run concurrent to his state sentence. He argues that absent these representational failures he would have sought a more favorable plea agreement rather than pleading guilty to the indictment.

A. Sentencing Representations

The assertion that he believed he was guaranteed a sentence between 46-57 months is contradicted by the record. Mr. Shelton acknowledged, both in writing, and at the plea hearing, that he understood that there was no agreement as to the sentencing range that would apply, and that the sentencing range would be determined by the Court following a pre-sentence investigation. (ECF #49, PageID 141; ECF #65, PageID 289-91). He also affirmed, under oath, that no promises or agreements had been made other than those expressly stated in the written plea. (ECF #65, PageID 281-82, 295-96). To ensure that he was aware of all terms and had not

based his decision on any promises made outside of the terms of the written change of plea, the Court had the written plea read in full in open court, and questioned Mr. Shelton about his understanding of the terms. (ECF #65, PageID 285, 295-97). A defendant's declaration in open court that he understands the terms of his plea, and is entering into it knowingly and voluntarily carries a strong presumption of truth. *See Blackledge v. Allison*, 431 U.S. 63, 73-74 (1977).

Further, Mr. Shelton does not allege that he would have refused to plead to the indictment had he been aware of the correct sentencing guideline range.    Mr. Shelton had "made it clear to [his] attorney that [he] wanted to plead guilty in both cases and just wanted him to do whatever he could to get me the best sentence possible." He also does not state that he would have asked his counsel to negotiate for a more favorable deal had he known that the correct sentencing range was higher that what his counsel has allegedly told him. In fact, even now, Mr. Shelton is not seeking to withdraw his plea in order to avail himself of trial, or negotiate a new plea agreement that would result in a reduced sentencing range. Mr. Shelton has not met his burden of showing that any misrepresentation his counsel allegedly made about his anticipated sentencing range was prejudicial. Therefore, this alleged error did not rise to the level of ineffective assistance of counsel.

B. Application of U.S.S.G. §5G1.3(c)

Defendant argues that, as a matter of law, U.S.S.G. §5G1.3(c) should have been applied to impose a federal sentence concurrent with Mr. Shelton's anticipated state sentence on the assault referenced in the pre-sentence report. He, therefore, claims that his counsels' failure to address the provision in plea negotiations or during sentencing amounted to ineffective assistance of counsel. Section 5G1.3(c) provides that when "a state term of imprisonment is anticipated to

6

result from another offense that is relevant conduct to the instant offense of conviction . . . the sentence for the instant offense shall be imposed to run concurrently to the anticipated term of imprisonment."   This section only applies when the state offense is "relevant conduct" to the federal offense, under the sentencing guidelines.   Therefore, counsel's failure to raise the issue could have been deficient only if the state offense was relevant conduct to Mr. Shelton's federal offense.

Section 1B1.3(1) defines relevant conduct as "all acts and omissions committed ... by the defendant," which "occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense."   In this case the offense(s) of conviction was selling and trafficking in weapons, including weapons that qualify as machine guns.  The state court offense was an assault, with a weapon, that also involved firing shots into a residence.  There is nothing in the record that would indicate that the state offenses took place in the commission of the federal trafficking offense(s), in preparation for the federal trafficking offense(s), or to avoid detection or responsibility for the federal trafficking offense(s).  There is no evidence that the assault and firing of weapons into a residence was in any way related to Mr. Shelton's trafficking scheme.

Mr. Shelton's state conduct also fails to meet the requirements for "relevant" conduct under §1B1.3(2) and (3).  To qualify as a common scheme or plan under these provisions, the offenses must "be substantially connected to each other by at least one common factor, such as common victims, common accomplices, common purpose, or similar modus operandi." *United States v. Hodge*, 805 F.3d 675, 683 (6th Cir. 2015).  There is nothing in the record to support any such connection between the assault/shooting and the long running trafficking scheme.  Because

7

the record does not support a finding that the state offense constituted relevant conduct for purposes of his federal sentencing, §5G1.3(c) would not have applied, and counsel was not deficient for failing to raise the issue. Attorneys have no duty to pursue frivolous arguments. *Jalowiec v. Bradshaw*, 657 F.3d at 321-22.

Absent the application of §5G1.3, when a federal sentence is imposed "at a different time than a state sentence, the federal and state sentences there is a statutory presumption that the sentences will run consecutively. *See, United States v. Shepherd*, 2026 U.S. App. LEXIS 1285, *7 (6th Cir. 2026)(quoting 18 U.S.C. §3584(a)). Therefore counsel also was not deficient for failing to raise the issue of concurrent vs consecutive sentences or for failing to seek a plea agreement based on concurrent sentencing.

Even if the state offense could have technically qualified as relevant conduct, failing to raise the issue was not prejudicial because concurrent sentences were not warranted under the specific circumstances of this case. Although §5G1.3 uses mandatory language, stating that courts "shall" impose concurrent sentences when the provision applies, the guidelines remain merely advisory and do not bind the court's sentencing determination. *Beckles v. United States*, 580 U.S. 256, 265 (2017); *United States v. Shepherd*, 2026 U.S. App. LEXIS 1285, *7 (6th Cir. 2026). Therefore, "the district court's decision whether to impose a concurrent or consecutive sentence pursuant to §5G1.3 is discretionary." *United States v. Hall*, 632 F.3d 331, 335 (6th Cir. 2011).

Mr. Shelton's federal offenses were selling and trafficking in weapons, including machine guns. His base offense level started at a level 18 because the offenses included firearms that meet the definition of a machine gun. (ECF #54, PageID 200). The weapon associated with the

8

state offense was not a machine gun. He received four additional levels because the offense involved between 8 and 24 firearms, specifically seventeen firearms in addition to multiple machine gun conversion devices. (*Id.*). The state offense involved one weapon, without which Mr. Shelton would still have engaged in the sale of 16 firearms and multiple machine gun conversion devices totally unrelated to the state court offense. He received an additional four points for engaging in the trafficking of weapons. (*Id.*). None of the state offenses involved the trafficking of weapons. Finally, Mr. Shelton received yet another four level increase because he knew or had reason to believe that the trafficked weapons "would be transported out of the United States." (*Id.*). None of the charges, nor any of the offense level calculations relied on any conduct he was convicted of in the state court proceedings.[2] When the conduct supporting a state conviction does not influence the base offense level or result in an increase in the offense level of the federal offense, it may not support a concurrent sentence under §1B1.3 and §5G1.3. *See, generally, United States v. Hall,* 632 F.3d 331 (6th Cir. 2011)(finding state offense conduct that did not form the basis for any increase in federal offense level did not trigger application of §5G1.3) ; *United States v. Fee,* 2007 U.S. Dist. LEIS 87084, (E.D. Ky 2007)(finding technically relevant state offense conduct that did not affect federal offense level did not trigger application

---

[2] There is also an indication that these four points would be supported by a finding that Mr. Shelton had used one of the firearms in connection with a felony offense. Such a finding would be justified by his use of one of the weapons in the state court assault. However, even without the state court offense, Mr. Shelton would have been assessed the four level increase because the agents who purchased the other trafficked weapons specifically informed Mr. Shelton that those weapons would "be transported to Mexico." (ECF #54, PageID 197). Therefore, the addition of these four points did not rely Mr. Shelton's use of a firearm during the commission of the state felony. (ECF #54). .

of §5G1.3) .[3]

In this case, the state court offense did not qualify as relevant conduct to the federal offense. Further, the imposition of consecutive sentences was necessary to address the separate and distinct harms caused by separate and distinct criminal conduct. The consecutive sentence was imposed only after full consideration of the §3553 factors, with full understanding of the pending state court claims and anticipated state court sentence. Because the files and records in this case conclusively show that Petitioner is entitled to no relief under § 2255, no evidentiary hearing is required to resolve the pending Motion. As Mr. Shelton has failed to meet his burden of proving a violation of his constitutional rights by a preponderance of the evidence, his claim is DENIED.

## CERTIFICATE OF APPEALABILITY

Pursuant to 28 U.S.C. § 2253, the Court must determine whether to grant a certificate of appealability as to any of the claims presented in the Petition. 28 U.S.C. § 2253 provides, in part, as follows:

> (c)(1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from --
>
> > (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B) the final order in a proceeding under section 2255.
>
> (2) A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.

10

(3) The certificate of appealability under paragraph (1) shall indicate which specific issue or issues satisfy the showing required by paragraph (2).

In order to make "substantial showing" of the denial of a constitutional right, as required under 28 U.S.C. § 2255(c)(2), a habeas prisoner must demonstrate "that reasonable jurists could debate whether . . . the petition should have been resolved in a different manner or that the issue presented were 'adequate to deserve encouragement to proceed further.'" *Slack v. McDaniel*, 529 U.S. 473, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4, 103 S. Ct. 3383, 77 L. Ed. 2d 1090 (1983).)

Where a district court has rejected the constitutional claims on the merits, the petitioner must demonstrate only that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.  *Slack*, 529 U.S. at 484.

For the reasons stated above, the Court concludes that Petitioner has failed to make a substantial showing of the denial of a constitutional right. Accordingly, the Court declines to issue a certificate of appealability. For the reasons set forth above, Petitioner's Motion to Vacate, Sentence Pursuant to 28 U.S.C. § 2255(c) is DENIED (ECF #66).

IT IS SO ORDERED.

DONALD C. NUGENT
United States District Judge

DATED: February 3, 2026

11